DELAWARE POWER AND LIGHT COMPANY, a Delaware corporation, Third Party Plaintiff, v. THE MAYOR AND COUNCIL OF THE CITY OF WILMINGTON, a municipal corporation, Third Party Defendant.

(*June* 2, 1964.)

STIFTEL, J., sitting.

*William Prickett, Sr.* (of Prickett and Prickett) for Delaware Power and Light Company.

*Alfred M. Isaacs* (of Flanzer and Isaacs) for The Mayor and Council of the City of Wilmington, and Frank J. Gentile, Assistant City Solicitor.

Superior Court for New Castle County, No. 1512, Civil Action, 1962.

STIFTEL, Judge.

This is a motion by the third party defendant, The Mayor and Council of the City of Wilmington ("the City") to dismiss the third party complaint filed against it by the third party plaintiff, the Delaware Power and Light Company ("the Power Company"). The City's motion to dis-

miss is based on an indemnity agreement dated August 7, 1906, between it and a corporate predecessor of the Power Company. The plaintiffs, John H. Phillips, Jr. and Beatrice D. Phillips, his wife, and the other third party defendant, Dabson Paving Company, although parties in this case, are not involved in this motion.

Plaintiffs' home and personal property were destroyed and Beatrice Phillips was injured as a result of a gas explosion. Plaintiffs sued only the Power Company. The Power Company then impleaded the City and Dabson Paving Company as third party defendants, claiming that the explosion was due to the negligence of either or both. The City is alleged by the Power Company to have been negligent in laying a concrete slab in the bed of the street above a gas main, the weight of which allegedly caused the gas main to break which, in turn, caused the gas to escape and explode on or about plaintiff's premises. For the purposes of this motion, the negligence and legal liability of the City are assumed. The sole question to be answered is whether the indemnity provisions in section 5 of the agreement between the City and the Power Company have the effect of relieving the City from liability for its own negligent acts. Section 5 of the agreement provides as follows:

"Section 5. That it, the said corporation, will at all times fully indemnify, protect and save harmless 'The Mayor and Council of Wilmington', and its successors, from any and all actions, claims, suits, damages, charges, costs and expenses arising from the delay, negligence or unskillfulness on its part, or its servants, or arising from any injury or injuries which may happen to any person or persons, from or on account of the laying and using of said conduits, pipes, wires, etc."

Contracts to relieve an indemnitee from the con-

sequences of its own negligence are not favored in the law. *Pan American World Airways, Inc. v. United Aircraft Corporation,* 3 Storey 7, 8, 163 A.2d 582, 587; Anno: 175 A.L.R. 8, 30. Such contracts are to be strictly construed and will not be interpreted to provide such indemnification unless so expressed in clear terms. *Pan American World Airways, Inc. v. United Aircraft Corporation,* supra, 163 A.2d at page 587; *Altemus v. Pennsylvania Railroad Company,* D.C.Del., 1962, 210 F.Supp. 834, 835; *Marshall v. Maryland, D.&V. Ry. Co.,*[1] 1 W.W.Harr. 170, 112 A. 526, 527; 42 C.J.S. Indemnity § 12; 27 Am.Jur., "Indemnity", § 15.

[2] In the light of the foregoing principles, I now examine the language used in section 5 of the agreement between the City and the Power Company. The first portion of the contract provides indemnity for the City "from any and all actions, claims, suits, damages, charges, costs

---

[1] The Marshall case was decided in 1921 by the Superior Court of Delaware. It construed the following indemnity language as failing to exempt the lessor railroad from liability for its own negligence in setting fire to building leased to plaintiff-indemnitor, an operator of a canning business: "That in consideration of the issuance of this permit (to use the buildings) they shall and will save and keep harmless and indemnify the party of the first part (Railroad) from and against all claims for damages of whatsoever kind or nature arising in any manner or under any circumstances through the exercise of any right granted or conferred hereby, whether such damages be sustained by the parties of the second part or by other person or persons, corporation or corporations which seek to hold the party of the first part liable." The Marshall Court explained that "If it was the intention of the parties that the provision should secure to the defendant company the exemption claimed for it in this action, it should appear from the language of the provision fairly interpreted; * * *" It further stated: "Clearly, exemption from liability for negligence or from fire is not expressed in the provision." In 1944, the District Court of Delaware, in *Smoke v. Turner Construction Co.,* 54 F.Supp. 369, upheld an indemnification agreement in general or all-inclusive language protecting a general contractor from its own negligence and explained (p. 371): "The Delaware law does not require that indemnity from one's own negligence be expressed in so many words, but it is sufficient if such intention appear from a fair construction of the instrument" (citing Marshall). In 1948, the editor of a note in 175 A.L.R. listed the Marshall

and expenses arising from the delay, negligence or unskillfulness on *its part,* or *its servants,* * * *" (All italics are mine). At most, the word "its" refers only to the Power Company's or its own servants' acts of delay, negligence or unskillfulness causing claims and damages. With this construction, the City apparently does not disagree.

However, the City argues that the last clause of section 5 of the agreement shows the intent of the Power Company to indemnify the City for any claim or suit "arising from any injury or injuries which may happen to any person or persons, from or on account of the laying and using of said conduits, pipes, wires, etc." The City fails to explain how this language immunizes the City for its own negligent acts. The clause refers to im-

----

Note 1 continued—

case on page 30, note 11, under the proposition that "where the parties fail to refer expressly to negligence in their contract such failure evidences the parties' intention not to provide for indemnity for indemnitee's acts." Likewise, in 1952, in *Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co.,* 7 Cir., 195 F.2d 467, at p. 469, the Court used Marshall to support the statement that "Some (courts) hold that general words are not sufficient * * *", that "specific reference to negligence must be made or the intent shown by unequivocal terms." See, also, dissent in 1960 case of *Metropolitan Paving Co. v. Gordon Herkenhoff & Associates, Inc.,* 66 N.M. 41, 341 P.2d 460, 464.

In *Pan American World Airways, Inc. v. United Aircraft Corporation,* supra, our Supreme Court, in 1960, mentioned Marshall while construing Connecticut law and thought it stood for the principle that indemnification agreements "if possible are construed not to confer immunity from liability" to the indemnitee from the consequences of its negligence. The Court failed to mention the Smoke case. In 1962, the District of Delaware, in interpreting Delaware law, in *Altemus v. Pennsylvania Railroad Company,* 210 F.Supp. 834, failed to mention the Smoke case, decided in 1944 by the same Court, but did rely on the language of Pan American and its citation of Marshall when it stated (p. 835): "The Courts very generally refuse to arrive at such a result unless it is made absolutely clear that the intention of the party drawing the contract is to indemnify himself against the consequences of his own negligence." This Court understood Delaware law to require "strict construction" and found that the indemnitee had not shown by "crystal clear" language that it "intended" to protect itself against accidents to its own employees."

munity to the City for injuries to people from acts of the Power Company in "laying" and "using" conduits, pipes, wires, etc. The language indicates indemnification to the City for fault on the part of the Power Company in causing injuries to people while performing its duties in laying and using conduits or pipes. It was never contemplated by the parties that the City had the right to lay or use the conduits or pipes. This suit arises out of the Power Company's claim that the City was negligent in placing a heavy concrete slab, not a pipe or conduit, in the bed of a street above a gas main, causing the main to break. *Cf. Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co.*, 7 Cir., 195 F.2d 467; *Norkus v. General Motors Corp.*, D.C.S.D.Ind., 218 F.Supp. 398; *Kansas City Power & Light Co. v. Federal Construction Corporation*, Sup.Ct.Mo., 351 S.W.2d 741. Clearly, exemption from liability is not expressed in the indemnity provisions; see *Marshall v. Maryland, D. & V. Ry. Co.*, supra, 112 A. at page 527.

I conclude that the contract of indemnity relied on by the City does not impose liability upon the Power Company for the negligent acts of the City. The motion of the City to dismiss the third party complaint is, therefore, denied.