| **Latifaj v 1251 Ams. Assoc. LP** |
| 2025 NY Slip Op 30711(U) |
| March 4, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 151609/2017 |
| Judge: Lori S. Sattler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 02M

-------------------------------------------------------------------------------X

AKILE LATIFAJ,

Plaintiff,

- v -

1251 AMERICAS ASSOCIATES LP, MITSUI FUDOSAN
AMERICA, INC.,

Defendant.

| | |
|---|---|
| **INDEX NO.** | 151609/2017 |
| **MOTION DATE** | 11/13/2023, 11/15/2023, 11/30/2023, 12/05/2023 |
| **MOTION SEQ. NO.** | 005 006 007 008 |

**DECISION + ORDER ON MOTION**

-------------------------------------------------------------------------------X

1251 AMERICAS ASSOCIATES LP, MITSUI FUDOSAN
AMERICA, INC.

Plaintiff,

-against-

ABM INDUSTRIES INCORPORATED, ABM JANITORIAL
SERVICES NORTHEAST, INC,, ABM JANITORIALSERVICES
NORTHEAST, INC., ABM JANITORIAL SERVICES
NORTHEAST, INC.

Defendant.

Third-Party
Index No.  595414/2018

-------------------------------------------------------------------------------X

1251 AMERICAS ASSOCIATES LP, MITSUI FUDOSAN
AMERICA, INC.

Plaintiff,

-against-

ABM SECURITY SERVICES, INC., ABM ONSITE SERVICES,
INC., UNIVERSAL PROTECTION SERVICE, LP, UNIVERSAL
SERVICES OF AMERICA, L.P., UNIVERSAL PROTECTION
GP, LLC

Defendant.

Second Third-Party
Index No.  595651/2019

-------------------------------------------------------------------------------X

HON. LORI S. SATTLER:

**151609/2017   LATIFAJ, AKILE vs. 1251 AMERICAS ASSOCIATES LP**
**Motion No.  005 006 007 008**

Page 1 of 11

[* 1]

The following e-filed documents, listed by NYSCEF document number (Motion 005) 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 211, 254, 255, 262, 264, 268, 269, 270, 271, 276, 280

were read on this motion to/for _____ JUDGMENT - SUMMARY _____.

The following e-filed documents, listed by NYSCEF document number (Motion 006) 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 246, 247, 248, 249, 250, 251, 252, 256, 257, 258, 259, 260, 266, 267, 272, 273, 278, 281

were read on this motion to/for _____ JUDGMENT - SUMMARY _____.

The following e-filed documents, listed by NYSCEF document number (Motion 007) 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 261, 263, 265, 277, 282

were read on this motion to/for _____ JUDGMENT - SUMMARY _____.

The following e-filed documents, listed by NYSCEF document number (Motion 008) 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 253, 274, 275, 279, 283

were read on this motion to/for _____ SUMMARY JUDGMENT(AFTER JOINDER _____.

This premises liability action stems from injuries sustained by plaintiff Akile Latifaj ("Plaintiff") in an alleged trip and fall over a pedestrian barricade on January 15, 2016 in the exterior plaza of 1251 Avenue of the Americas, New York, New York 10020 ("the Premises"). Plaintiff alleges that the barricades were negligently placed in an open position and caused her to fall after her foot became entangled in the barricade. Plaintiff was an employee of Third-Party Defendant ABM Janitorial Services Northeast, Inc. ("ABM Janitorial") at the time of the incident.

The Premises are owned by defendant 1251 Americas Associates II, LP ("Americas Associates"), a subsidiary of defendant Mitsui Fudosan America, Inc. (collectively "Defendants"). Americas Associates retained various ABM companies to provide building services (collectively "ABM").[1] Second third-party defendants ABM Onsite Services, Inc. ("ABM Onsite") and ABM Security Services, Inc. ("ABM Security") were hired to provide

---

[1] ABM Industries Incorporated ("ABM Industries"), ABM Onsite Services, Inc., ABM Janitorial, and ABM Security Services, Inc.

**151609/2017   LATIFAJ, AKILE vs. 1251 AMERICAS ASSOCIATES LP**                    **Page 2 of 11**
**Motion No.  005 006 007 008**

security for the Premises pursuant to a Security Services Agreement (NYSCEF Doc. No. 195). ABM later sold its security business, including the security contract for the Premises, to third-party defendants Universal Protection Service, LP, Universal Services of America, L.P. and Universal Protection GP, LLC (collectively "Universal") on October 26, 2015 (NYSCEF Doc. No. 177, "Asset Purchase Agreement"). ABM Onsite and Universal signed a separate Transition Agreement whereby ABM Onsite and ABM Security would continue managing the security services for the Premises from October 26, 2015 until April 26, 2016 (NYSCEF Doc. No. 178). Plaintiff's accident occurred during this transition period. Defendants, ABM, and Universal now move for summary judgment in Motion Sequences 005, 006, 007, and 008, which are consolidated herein for disposition.

In Motion Sequence 005, ABM Onsite and ABM Security move for summary judgment for liability on their cross-claim for contractual indemnification against Universal. On a motion for summary judgment, a movant must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). After the movant makes this showing, "the burden shifts to the party opposing the motion . . . to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact" such that trial of the action is required (*id.*). The Court must view the facts "in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]).

ABM Onsite and ABM Security argue that they are entitled to contractual indemnification because Universal agreed to assume liability for injuries such as Plaintiff's as part of the Asset Purchase Agreement. Universal argues that it should not be held liable for contractual indemnification because it was not providing security services on the premises at the

[* 3]

time of Plaintiff's accident and placement of the barrier did not arise out of ABM's security business, since placement of such barriers was within ABM Janitorial's contractual duties.

The Asset Purchase Agreement set forth Universal's assumed liabilities, defined as those liabilities "of a member of the Seller Group to the extent arising out of or resulting from the operation or conduct of the Security Business" (Asset Purchase Agreement § 9.01). These included, in relevant part, "all Liabilities under the executory portion of any Assigned Contracts . . . that arise out of or result from the operations of the Security Business from and after the Closing [October 26, 2015]" (*id*. § 9.01[b]) and "all Liabilities for Actions to the extent resulting from or arising out of the operation of the Security Business, from and after the Closing [October 26, 2015]" (*id*. § 9.01[f]).

It is undisputed that the Asset Purchase Agreement contains a choice of law provision which provides that interpretation of the agreement is to be governed by Delaware law (Asset Purchase Agreement § 8.04). Under Delaware law, the Court must strictly construe the relevant language in the Asset Purchase Agreement to determine whether Universal assumed liability for injuries arising out of ABM Security's allegedly negligent placement of the barrier (*see Powell v Interstate Vendaway, Inc.*, 300 A2d 241, 245 [Del Super 1972] ["The intention to indemnify must clearly appear from a fair construction of the instrument, but precise words need not be used, so long as the intention to create such indemnity is clear"]).

Strictly construed, the relevant portion of the Asset Purchase Agreement evinces an intent to indemnify for liabilities arising out of or resulting from the operation of the "Security Business." At issue in this case is whether employees of the "Security Business" negligently placed a metal barricade after being directed to do so by the managing agent for the building. The placement of these pedestrian barricades is therefore an activity "arising out of or resulting

[* 4]

from the operation or conduct of the Security Business" and is thus squarely within the ambit of the Asset Purchase Agreement's "Assumed Liabilities." ABM Onsite and ABM Security's motion for summary judgment on their contractual indemnification cross-claim against Universal is accordingly granted.

In Motion Sequence 006, Defendants move for summary judgment dismissing all claims and cross-claims against them and granting them contractual and common law indemnification against ABM Security or, in the alternative, for conditional judgment on their indemnification claims.[2] They invoke the Security Services Agreement's indemnification language:

> Contractor shall indemnify, defend, and hold harmless the indemnified parties (hereinafter defined) from and against all causes of action, claims, including but not limited to causes of action and claims for negligence, strict liability, and gross negligence, damages, liens, demands, costs, expenses and liability, including reasonable attorneys' and court costs, (collectively "claims" and individually a "claim") arising in favor of any persons (including an indemnified party) which, in whole or in part, arises out of or results from or is any way related to the following (but only to the extent same are caused by the negligence, misconduct, or other fault of contract [*sic*], its agents, employees, licensees, or subcontractors), (I) any act or omission of contractor or contractor's employees, agents, licensees or subcontractors, (II) the operation of contractor's equipment at the project, or (III) any failure by contractor or its employees, agents, or subcontractors to comply with the terms and obligations of this contract…

(Security Services Agreement § 9). It is undisputed that Defendants were indemnified parties under the Security Services Agreement.

The plain language of the Security Services Agreement states that this provision applies "only to the extent same are caused by the negligence, misconduct, or other fault of contract [*sic*], its agents, employees, licensees, or subcontractors." Whether plaintiff's alleged injuries were caused by the negligence, misconduct or other fault of ABM Security, their agents,

---

[2] Defendants originally moved against ABM Onsite and ABM Security ABM Industries and ABM Janitorial, but modified their request once it was established that only ABM Security placed the barriers. Defendants also appear to move to dismiss "plaintiff's claims" but fail to address this argument in their papers.

**151609/2017   LATIFAJ, AKILE vs. 1251 AMERICAS ASSOCIATES LP**                    **Page 5 of 11**
**Motion No.  005 006 007 008**

[* 5]

employees, licensees or subcontractors is a question of fact that has not yet been determined, and therefore Defendants' request for an order dismissing all claims and cross-claims against them and granting them contractual and common law indemnification against ABM Security is therefore denied as premature.

The parties dispute whether there is a question of fact as to whether Defendants were negligent. A property owner has a nondelegable duty to maintain its premises in a reasonably safe condition and may be held liable where an independent contractor's negligence created a dangerous condition (*Farrugia v 1440 Broadway Assoc.*, 163 AD3d 452, 454 [1st Dept 2018]; *see Adams v Hilton Hotels, Inc.*, 13 AD3d 175, 177 [1st Dept 2004] [principal may be liable for acts of independent contractor where principal bears "specific, nondelegable duty"]). A defendant owner moving for summary judgment has the initial burden of showing that it did not create a dangerous or defective condition or did not have actual or constructive knowledge of the condition (*Langer v 116 Lexington Ave., Inc.*, 92 AD3d 597, 598 [1st Dept 2012]). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (*Gordon v American Museum of Natural History*, 67 NY2d 836 [1986]; *see also Velocci v Stop & Shop*, 188 AD3d 436 [1st Dept 2020]).

Here, Defendants do not satisfy their burden of demonstrating that they lacked constructive notice of the alleged defective condition as a matter of law (*see Brennan v Carriage House Motor Cars, Ltd.*, 224 AD2d 204, 205 [1st Dept 1996]). The barrier in question was placed at approximately 5:00 p.m. and Plaintiff did not trip until over seven hours later at approximately 12:25 a.m. It is therefore within the purview of the trier of fact to determine whether this known, non-negligible period of time was sufficient to establish Defendants'

[* 6]

constructive notice.  Defendants' request for summary judgment dismissing all claims and cross-claims against them and granting them conditional indemnification against ABM Security is therefore denied.

In Motion Sequence 007, ABM moves for summary judgment dismissing all claims and cross-claims against them.  ABM first argues that ABM Industries and ABM Onsite are parent companies and ABM Janitorial is an entity that performed janitorial work, and therefore were not involved in placing the barricade that allegedly caused Plaintiff's injury.  ABM Security admits that its employees placed the barrier and Plaintiff's opposition to the motion makes no arguments as to why this branch of the motion should be denied.  The Court accordingly finds that there is no issue of fact as to the lack of negligence on the part of ABM Industries, ABM Onsite, and ABM Janitorial, and grants the branch of the motion seeking dismissal of all claims and cross-claims against these entities.

ABM next argues that all claims and cross-claims should be dismissed as against ABM Security because the alleged condition that caused Plaintiff's injury was open and obvious.  "If a hazard or dangerous condition is open and obvious, the owner of the property has no duty to warn a visitor of the danger . . . . The hazard or dangerous condition must be of a nature that could not reasonably be overlooked by anyone in the area whose eyes were open" (*Westbrook v WR Activities-Cabrera Mkts.*, 5 AD3d 69, 71 [1st Dept 2004]).  "[T]he question of whether a condition is open and obvious is generally a jury question and a court should only determine that a risk was open and obvious as a matter of law when the facts compel such a conclusion" (*id.* at 72 [1st Dept 2004]) although the Court "may determine that a risk was open and obvious as a matter of law . . . on the basis of clear and undisputed evidence" (*Tagle v Jakob*, 97 NY2d 165, 169 [2001]).

It is undisputed that plaintiff claims she tripped on the leg of a metal barricade; that Plaintiff had worked in the building for fifteen years prior to the accident; and that Plaintiff had observed and walked through pedestrian barricades in approximately the same location in the past. However, on the night of her accident Plaintiff testified that there were no barricades immediately outside the building exit she used on the night of her accident, and that there were no signs, warning cones, or similar devices in that area of the Premises' exterior plaza (NYSCEF Doc. No. 232, Plaintiff EBT at 18-19). She stated that she tripped on a barricade that had been placed around the corner of the building, and testified as to the lighting in the area through which she was walking:

> Q: What was the lighting like in the area where you were walking?
> A: So that particular place doesn't have a lot of light. It never does.
> Q: Was it light enough so you could see the pavement ahead of you as you were walking?
> A: Yes, yes.

(*id.* at 18). Although Plaintiff stated that it was light enough to see the pavement ahead of her, she was not asked and did not state whether it was light enough to distinguish the metal barricade from the pavement or whether she saw the barricade prior to her accident. Plaintiff also submits an expert affidavit concluding "the light grey footings of the barrier would not have been readily observable against the light grey surface of the walking area in the low light conditions" (NYSCEF Doc. No. 259, Wooley aff ¶ 6). ABM submits photographs that purport to show the barricades used at the Premises and which it claims support its contention that they were open and obvious (NYSCEF Doc. No. 226). However, these photographs do not depict the barricades in the lighting conditions described by Plaintiff, do not indicate how the subject barricade was placed at the time of Plaintiff's accident, and do not depict the barricade that Plaintiff identified as the one that caused her accident (Plaintiff EBT at 21).

151609/2017   LATIFAJ, AKILE vs. 1251 AMERICAS ASSOCIATES LP                     Page 8 of 11
Motion No.  005 006 007 008

[* 8]

Taken together, these parts of the record raise issues of fact that a finder of fact may credit and which render the issue unsuitable for resolution on summary judgment (*cf. Rachlin v 34th St. Partnership, Inc.*, 96 AD3d 690, 690-691 [1st Dept 2012] [defendant failed to make prima facie case where plaintiff tripped over barrier base at night in a poorly lit area]). The Court therefore finds that there are material issues of fact as to whether the barricade that allegedly caused Plaintiff's accident was an open and obvious condition. ABM's request for an order dismissing all claims and cross-claims against ABM Security is accordingly denied.

In Motion Sequence 008, Universal moves for summary judgment dismissing the all claims against it in Defendants' Third-Party Complaint and all cross-claims asserted against them by ABM Onsite and ABM Security. The branch of the motion seeking dismissal of ABM Onsite and ABM Security's cross-claims is denied as the Court has already granted summary judgment on these claims against Universal in Motion Sequence 005 *supra*.

The branch of Universal's motion for summary judgment dismissing all common law indemnification claims against them, including those by ABM, is granted. The common law indemnification claims must be dismissed as Universal is free from negligence as a matter of law because it was not present at the site and exercised no supervisory control at the time of Plaintiff's accident. It is undisputed that, during the transition period when Plaintiff allegedly fell, ABM Security was operating the Security Business pursuant to the Transition Agreement.

As to the contractual indemnification claims, Universal argues that Defendants' claim should be dismissed because the indemnification provision of the Security Services Contract is conditioned upon a finding of "negligence, misconduct, or other fault of contract" by the contractor's "agents, employees, licensees or subcontractors" (Security Services Agreement § 9). Although the Court denied Defendants' motion for summary judgment on their contractual

[* 9]

indemnification claim against ABM Onsite and ABM Security, this claim must be dismissed as against Universal because the Court has already determined that the Universal Defendants were not negligent as a matter of law. As Defendants' contractual indemnification claims against Universal rely on a finding of negligence by the indemnitor due to the relevant contractual language, Universal's request to dismiss the contractual indemnification claims by the Americas Defendants against them is granted.

Accordingly, it is hereby:

ORDERED**,** that the motion of defendants ABM Onsite and ABM Security (Motion Sequence 005) pursuant to CPLR § 3212 for an order granting contractual indemnification against defendants Universal Protection Service, LP, Universal Services of America, L.P. and Universal Protection GP, LLC is granted; and it is further

ORDERED**,** that the motion of defendants 1251 Americas Associates II, LP and Mitsui Fudosan America, Inc. (Motion Sequence 006) dismissing all claims and cross-claims against them and granting them contractual and common law indemnification against ABM Security Services, Inc. is denied; and it is further

ORDERED**,** that the motion of defendants ABM Industries Incorporated, ABM Onsite Services, Inc., ABM Janitorial Services Northeast, Inc., and ABM Security Services, Inc. (Motion Sequence 007) pursuant to CPLR § 3212 for an order granting them summary judgment dismissing all claims and cross-claims against them is granted as it relates to ABM Industries Incorporated, ABM Onsite Services, Inc., and ABM Janitorial Services Northeast, Inc. but denied as it relates to ABM Security Services, Inc.; and it is further

ORDERED**,** that the motion of defendants Universal Protection Service, LP, Universal Services of America, L.P. and Universal Protection GP, LLC (Motion Sequence 008) for

summary judgment is granted to the extent of dismissing the third party complaint of

defendants/third-party plaintiffs 1251 Americas Associates II, LP and Mitsui Fudosan America,

and denied with respect to their request to dismiss all cross-claims asserted against them by the

defendants ABM Onsite and ABM Security is granted with respect the cross-claims for common

law indemnification and otherwise denied.

Any requests for relief not discussed herein are denied.

This constitutes the decision and order of the court.

**3/4/2025**
**DATE**

**LORI S. SATTLER, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**151609/2017  LATIFAJ, AKILE vs. 1251 AMERICAS ASSOCIATES LP**
**Motion No.  005 006 007 008**

**Page 11 of 11**