Gerald C. ROCK and Janet M. Rock,
his wife, Plaintiffs,

v.

DELAWARE ELECTRIC COOPERATIVE,
INC., a Delaware Corpora-
tion, Defendant,

v.

The STATE of Delaware, Defendant and
Third Party Plaintiff,

v.

W. B. MITTEN & SONS, INC., a Delaware
Corporation, Third Party Defendant.

Leon G. POWELL, Plaintiff,

v.

INTERSTATE VENDAWAY, INC., a Dela-
ware Corporation, Defendant and
Third Party Plaintiff,

v.

CHRYSLER CORPORATION, a Delaware
Corporation, Third Party Defendant.

James B. HARVEY, Plaintiff,

v.

The CITY OF WILMINGTON et al.,
Defendants.

The CITY OF WILMINGTON, a Municipal
Corporation of the State of Delaware, De-
fendant and Third Party Plaintiff,

v.

FACCIOLO PAVING AND CONSTRUCTION
COMPANY, a Delaware Corporation,
Third Party Defendant.

Superior Court of Delaware,
Kent and New Castle.

Oct. 31, 1974.

Julius Komissaroff, Howard M. Berg, Berg, Komissaroff & Sawyer, Wilmington, for third party defendants.

William Prickett, Myron T. Steele, Prickett, Ward, Burt & Sanders, Dover, for defendant and third party plaintiff, the State of Delaware.

Alfred M. Isaacs, Flanzer & Isaacs, Wilmington, for defendants and third party plaintiffs, Interstate Vendaway, Inc. and the City of Wilmington.

## OPINION

O'HARA, Judge.

The Court has four motions under consideration. Two third party defendants have filed motions to dismiss third party

complaints for failure to state claims upon which relief can be granted. One third party defendant has moved for summary judgment. One third party plaintiff has filed a cross motion for summary judgment in its favor with regard to its third party complaint. In their complaints, the third party plaintiffs seek indemnity of any amount recovered against them in actions brought by injured employees of the third party defendants. The third party plaintiffs base their claims for indemnification on an express or implied obligation arising out of contractual relations with the respective third party defendant. Each third party defendant was required to pay its employee compensation benefits.

The third party actions arise from the following factual situations:

Leon G. Powell, plaintiff, an employee of Chrysler Corporation ("Chrysler"), was injured while working for Chrysler when a truck operated on Chrysler's property by an employee of Interstate Vendaway, Inc. ("Vendaway") struck a stack of cartons pinning plaintiff between other cartons and a work table. Powell sued Vendaway for damages resulting from the injury, claiming negligence on the part of Vendaway's employee in the operation of the truck. Vendaway filed a third party complaint against Chrysler claiming breach of an implied covenant to provide a safe working place for Vendaway and an implied promise of indemnification for breach of the covenant. Chrysler answered the third party complaint asserting that an express indemnification provision in a contract precludes an implied right of indemnification.

This is Chrysler's third motion for summary judgment. The background and ruling on Chrysler's first motion appeared in Powell v. Interstate Vendaway, Inc., Del. Super., 300 A.2d 241 (1972). In that action, Vendaway's third party complaint alleged that the duty which Chrysler violated was to provide a safe working place for Chrysler's employee. The Court held that

the allegation was not supportable since the duty alleged was a common law duty of an employer to its employee to provide a safe working place. Vendaway had cited Diamond State Tel. Co. v. University of Delaware, Del.Supr., 269 A.2d 52 (1970) as authority. In distinguishing *Diamond,* the Court made the following observations:

"It [third party complaint] rested on the implied contractual obligation of the contractor to perform its contracted work in a workmanlike manner. By contrast Chrysler has no contractual work; its only express contractual duty was to provide certain space, utilities and facilities. Chrysler's activities are not contractually related to Vendaway. It is not asserted that plaintiff was performing services related in any way to the express contractual obligation of either Vendaway or Chrysler. * * * * If Chrysler is liable to indemnify Vendaway, it must rest upon an implied obligation which Chrysler (owner) owed to Vendaway (contractor). . . . "

Following the decision against it, Vendaway filed an amended complaint. Chrysler based its second motion for summary judgment upon the proposition that the instant case did not fall within the holding in *Diamond.* This Court, by opinion dated June 27, 1973, denied Chrysler's motion stating that even though the damages for which Vendaway seeks indemnification reflect a tort recovery by Chrysler's employee, the third party complaint states a valid cause of action springing from a separate contractual relationship. Chrysler filed a third motion for summary judgment and it is this motion which is presently before the Court.

Gerald C. Rock, plaintiff, an employee of W. B. Mitten & Sons, Inc. ("Mitten"), was injured while working for Mitten when the cable of a crane owned by Mitten came into contact with an uninsulated high-tension electric wire of Delaware Electric Cooperative, Inc. during the course of Mitten's rehabilitation of the

Mill Creek Bridge under contract with the State of Delaware ("State"). Rock sued State and Delaware Electric Cooperative for damages resulting from the injury alleging that State was negligent in drafting blueprints which failed to show that certain electric lines were uninsulated and to show their proper location, and in failing to halt construction when it knew or should have known of the dangerous condition created by a live high voltage wire within the proximity of the construction. State filed a third party complaint against Mitten claiming that express provisions protect State from any liability to third parties which is incurred under the construction contract. State also claims breach of an implied agreement to perform workmanlike service and an implied contractual promise of indemnification. Mitten answered the third party complaint asserting that express indemnification provisions do not entitle State to indemnity for a claim based upon its own negligence.

James B. Harvey, plaintiff, an employee of Facciolo Paving and Construction Company ("Facciolo"), was injured while working for Facciolo when he cut into an underground power line owned by the Delmarva Power & Light Company during the course of repairs to a sewer main of the City of Wilmington ("City"). Harvey sued City and Delmarva Power & Light Company. The plaintiff's complaint against City alleges liability on the part of City by reason of its negligence in failing to provide plaintiff with a safe place to work, failing to de-energize the high voltage electric line, and failing to mark the location of said electric line. City filed a third party complaint against Facciolo for indemnification on the express provisions in City's contract with Facciolo. Facciolo answered the third party complaint contending that the express indemnification provisions of the written contract between City and Facciolo do not indemnify City for the consequences of its own negligence. City filed a cross motion for summary judgment in its favor with regard to the third party complaint.

The questions to be decided by the Court are 1) whether the principals are entitled to indemnification either under the express indemnification provisions in the contracts or under separate implied obligations of indemnity from implied covenants by the contractors to perform their work in a workmanlike manner and, 2) whether a contractor is entitled to indemnification under an implied covenant by the owner to provide a safe working place for the contractor when there is an express indemnification provision in the contract.

■■■ There is no statutory basis for permitting recovery of damages from the employer of an injured employee by a third person tortfeasor. The Workmen's Compensation Act makes the liability of an employer to his employee absolute but limits it in amount. The employee is prohibited from suing his employer for injuries resulting from negligence of the employer or his employees. 19 Del.C. § 2304. However, § 2363 of the Act permits common law actions in tort against a third person whose negligence injures the employee. Pursuant to this authority the plaintiffs have brought actions against the defendants third party plaintiffs in the instant case. In 2 Larson, Workmen's Compensation Law 76.21 (1970) at 238, the author states:

> "The claim of an employee against the employer is solely for statutory benefits; his claim against the third person is for damages. The two are different in kind and cannot result in a common liability."

Thus, common law indemnity cannot be used to impose liability on an employer since it arises where two people commit a tort or wrong which hurts the same person. Citing Delaware's decisional law, if an employer is to be held liable to indemnify a third party plaintiff, "it must be upon some theory other than tortious conduct on

its part". Diamond State Tel. Co. v. University of Delaware, supra.

The doctrine of an implied right of indemnity was first announced in admiralty law in Ryan Stevedor. Co. v. Pan-Atlantic Steam. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) and is precedent within the federal orbit. As observed by the Court in Diamond State Tel. Co. v. University of Delaware, supra, the growth of the doctrine in the Federal Courts may have arisen from the application of admiralty's more equitable approach toward joint defendants and their respective obligations in contra-distinction to the common law. More recently the Delaware Supreme Court in Howard, Needles, Tammen & B. v. Steers, Perini & P., Del.Supr., 312 A.2d 621 (1973) observed that the principle of an implied promise of indemnity is generally restricted to maritime law. The specific language of the Court should be recognized:

> " . . . most decisions subsequent to *Ryan* have noted that the principle enunciated by that case is peculiar to maritime law, and few courts have extended it to other areas of the law."

The Delaware Supreme Court examined the question of indemnification by an employer to a third party in Diamond State Tel. Co. v. University of Delaware, supra. The Court gave thought to the trial court's decision that when two individuals are jointly negligent and the concurrent negligences contribute to the injury of another, one may be the primary wrongdoer and the other the secondary wrongdoer. Such a concept would hold the two parties as joint tortfeasors with the right of contribution running between them. The trial court also stated that even if a contract is not proven there may still be an equitable obligation on Diamond to indemnify University. The Supreme Court rejected these concepts as insufficient basis for indemnification by an employer of a third party. The Court held that imposing liability on a primary-secondary basis or on an equitable basis may not be done under our law. It is for this reason that the Court held that the only basis for liability of an employer to indemnify a third party is the breach of a promise, either express or implied.

When parties to a contract have entered into a written agreement expressly setting forth one party's indemnifying liability, there is no room for any enlargement of that obligation by implication. Howard, Needles, Tammen & B. v. Steers, Perini & P., supra. This doctrine was also enunciated in Waller v. J. E. Brenneman Company, Del.Super., 307 A.2d 550 (1973). In the case of *Waller*, a general contractor, Brenneman, on a repair project involving the St. George's Bridge in Delaware, entered into a subcontract with G & H Steel Service, Inc. Waller, an employee of G & H, was injured at the job site when he was struck by a concrete conveyor operated by Brenneman's employee. Brenneman claimed that a dangerous condition existed on the bridge which caused the injuries and damages to the plaintiff of which G & H was aware but in spite of its knowledge permitted Waller to work there. The contract between Brenneman and G & H contained two pertinent provisions, 1) an indemnification clause running in favor of the contractor and limited to the subcontractor's negligent acts or omissions and 2) an express covenant by the subcontractor to perform its work in a workmanlike manner. Brenneman had argued that an implied agreement to indemnify arose from an alleged breach of the express covenant by G & H to perform its work in a workmanlike manner. The Court held:

> "Where a written contract exists which includes a specific indemnification provision setting forth the rights and duties of the parties, the specific provision should govern and the courts should not enlarge the right to indemnification by implication."

Where a third party plaintiff is to be indemnified from the consequences of his own negligence, this intention must

clearly appear from the language of the agreement. See Howard, Needles, Tammen & B. v. Steers, Perini & P., supra; Marshall et al. v. Maryland, D. & V. Ry. Co., Del.Super., 1 W.W.Harr. 170, 112 A. 526 (1921); 175 A.L.R. 8 (1948). This rule was stated recently by the Delaware Supreme Court in State v. Interstate Amiesite Corporation, Del.Supr., 297 A.2d 41 (1972):

> ". . . such a contract provision must be crystal clear and unequivocal in requiring the contractor to assume all liability for damage claims, whichever party may have been guilty of the negligence which actually caused the injury."

However, after examining the indemnification provisions in the contract between State and Amiesite, the Court concluded that the language of the agreement was not crystal clear and sufficiently unequivocal to require Amiesite to indemnify the State for damages collected for State's own negligence. See also Hollingsworth v. Chrysler Corporation, Del.Super., 208 A.2d 61 (1965).

In other cases, the courts have held that the terms of the agreement protected the indemnitee against the consequences of his own negligence. In the case of Bar Steel Construction Corp. v. Read, Del.Supr., 277 A.2d 678 (1971), the Court held that where an employee of the contractor was killed while climbing a steel structure erected by the subcontractor, the indemnification agreement between the contractor and the subcontractor rendered the subcontractor answerable in damages. The terms of the contract had left no doubt that the subcontractor agreed to assume all damage claims arising out of the work required by the contract. The principle that a party may by contract protect itself from the results of its own negligence is also illustrated in a United States Circuit Court decision by Judge Collins J. Seitz. Jamison v. Ellwood Consolidated Water Company, U.S.Ct. 3rd Cir., 420 F.2d 787 (1970). In the *Jamison* case, a painting contractor entered into a written contract with a water company to paint its water tower. The contract contained a provision in which the contractor agreed to assume all damage claims "whether or not due in whole or in part to any act, omission, or negligence of the Water Company". An employee of the contractor was killed in a fall from the water tower because of the water company's failure to comply with certain Pennsylvania Department of Labor regulations. The contractor was unsuccessful in challenging the provision of the contract as against public policy by insulating the water company from the consequences of its failure to comply with an express statutory enactment. According to the Court the parties by contract had immunized the indemnitee from the results of his own negligence.

All the parties in the cases before the Court entered into written contracts with express indemnification provisions. Third party plaintiffs, State and City, have express indemnification provisions running in their favor. The express indemnification provision in the contract between Vendaway and Chrysler does not run in favor of Vendaway, the third party plaintiff, seeking indemnification. Vendaway asserts that the absence of an express indemnification provision in its favor permits an implied right of indemnification based on an implied covenant on the part of Chrysler to provide Vendaway with a safe place to work. Vendaway's position is that it is not attempting to enlarge on the express provisions in favor of Chrysler and, therefore, a separate implied right of indemnification may exist in its favor.

Applying the rule in the *Waller* case, if an implied agreement to indemnify cannot arise from breach of an independent express covenant by the indemnitor to perform its work for the indemnitee in a workmanlike manner, no greater right can arise from breach of a separate implied covenant by an indemnitor to provide a safe working place for the indemnitee.

In its third party complaint, State contends that Mitten owed State an independent duty to perform its work in a careful, prudent, and workmanlike manner and that Mitten's breach of this implied contract gives rise to an implied agreement to indemnify State. The law will not imply a right of indemnity where the parties have entered into a written contract with express indemnification provisions. Accordingly, the express provisions in the contracts under consideration shall govern and there shall be no presumption of additional implied obligations.

Before examining the express indemnification provisions in the principals' contracts, the Court observes that any indemnification rights due the indemnitees would arise only if they are, in fact, negligent. To require indemnification of the indemnitees for their own negligence, the language of their agreements must show this intent in clear and unequivocal terms. While the intention to indemnify against the results of the indemnitees' negligence must be clear, it need not be expressed in so many words. Where the language clearly indicates the intention of the parties that the agreement shall include negligence, the Court will give effect to such intention despite its inclination to construe the agreement strictly against the indemnitee. See Powell v. Interstate Vendaway, Inc., supra. It has also been said that in cases where it is not improbable that a party would undertake to indemnify the indemnitee against his own negligence, the Court need not follow the general rule of strict construction. 41 Am.Jur.2d, Indemnity, § 15 (1968).

The contract between State and Mitten contains the following indemnification provisions:

"The contractor shall indemnify and save harmless the department, its officers and employees from all suits, actions, or claims of any character brought because of any injuries or damage received or sustained by any person, per-

sons, or property on account of the operations of the said contractor; or on account of or in consequences of any neglect in safeguarding the work; or through use of unacceptable materials in constructing the work; or because of any act or omission, neglect, or misconduct of said contractor; or because of any claims or amounts recovered from any infringement of patent, trademark, or copyright; or from any claims or amounts arising or recovered under the 'Workmen's Compensation Act', or· any other law, ordinance, order, or decree . . . ."

State asserts that the provision above requires the contractor to assume responsibility for damage claims "on account of or in consequence of any neglect in safeguarding the work" and to indemnify State "from any claims or amounts arising or recovered under . . . any law, ordinance, order or decree". A condition precedent to the plaintiff's recovery is a finding of negligence on the part of State. State's right to indemnification would not be "on account of the operations" of Mitten. The provision applies only to claims based on the negligence of Mitten. The provisions in the above contract contain the exact language examined in *Amiesite,* in which State sought indemnification from Amiesite. After reviewing this provision, the Supreme Court found the terms insufficiently clear to require the contractor to indemnify State for damages collected for State's own negligence. This decision is controlling. The provision relied on by State does not indemnify State against its own negligent acts.

The contract between City and Facciolo contains the following provisions:

"The Contractor shall pay, indemnify and save harmless the City, its agents and employees from all suits, actions, claims, demands, damages, losses, expenses and/or costs of every kind and description to which the City may be subjected or put by reason of injury (including death) to persons or property re-

sulting from the manner or method employed by the Contractor, his agents and employees, or sub-contractors, in the performance of this contract, or any part thereof, or from, by or on account of any act or omission of the Contractor, his agents, and employees, or sub-contractors, and whether such suits, actions, claims, demands, damages, losses, expenses and/or costs be against, suffered or sustained by other corporations and persons to whom the City, its agents and employees, may become liable therefor . . ."

In addition to the provision above, the contract also provided as follows:

"(a) 2. Special Provisions

2:1. The Contractor shall be responsible to notify all utilities before commencing with the work, namely:

(1) Delmarva Power & Light Company (Gas)

(2) Diamond State Telephone Company

(3) Delmarva Power & Light Company (Power)

(4) Wilmington Water Department."

City directs specific attention to the following phrases in the above contract: ". . . to whom the City, its agents and employees, may become liable therefore . . ." which City contends obligates Facciolo to indemnify City if City should become liable because of ". . . such suits, actions, claims, demands, damages . . .". City further contends as follows: Facciolo agreed to notify the utilities before commencing work and it failed to do so. If it is determined that Facciolo failed to notify the utilities and that plaintiff's injuries resulted from that failure, this omission on Facciolo's part would require Facciolo to indemnify City with respect to the instant action. City will be liable to the plaintiff only if City is found to have been negligent. None of the provisions relied upon by City specifically provide a basis for relief for a claim predicated on City's negligence. Even though it is not improbable that Facciolo would undertake to indemnify City against its own negligence, the terms of the agreement are insufficiently clear and unequivocal to permit this construction.

The third party plaintiffs are not entitled to indemnification under either express indemnification provisions or implied obligations. Mitten's and Facciolo's motions to dismiss and Chrysler's motion for summary judgment are granted. City's cross-motion for summary judgment is denied.

It is so ordered.